UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No.23-274(JRT/DLM)

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MARVIN MILLER, JR.,

    Defendant.

**GOVERNMENT'S SENTENCING POSITION**

The United States of America, by and through its attorneys, Andrew M. Luger, United States Attorney for the District of Minnesota, and Rachel L. Kraker, Assistant United States Attorney, respectfully submits this memorandum in connection with the sentencing of Defendant Marvin Miller, Jr.

Throughout his adulthood, Marvin Miller, Jr. has consistently accumulated convictions for illegal possession of firearms. Despite serving lengthy prison sentences related to his crimes, Mr. Miller has remained undeterred, year after year, choosing to possess firearms and ammunition irrespective of the consequences. The instant offense is Mr. Miller's fourth conviction for illegal firearms possession in the last 15 years. Mr. Miller is currently serving a term of incarceration for a being a felon in possession of a firearm and was on pretrial release for that offense when he was arrested for the instant offense – possessing a machinegun. Because Mr. Miller has

1

repeatedly possessed firearms while ineligible to do so he should be sentenced to an additional sanction for the instant offense.

The United States respectfully recommends a sentence of 41 months' imprisonment, followed by three years of supervised release. The recommended sentence seeks to balance the seriousness of the offense and the clear need for deterrence, while also considering the defendant's criminal history and characteristics, as further described below.

## **Miller's Criminal Conduct**

On December 18, 2022, at 6:36 p.m. Minneapolis police received a 911 call reporting shots fired near the Children's Hospital of Minnesota. The caller reported that four individuals in a vehicle fired shots at the caller. The caller provided a description of the suspect vehicle. Shortly thereafter, police located the suspect vehicle in the area and conducted a traffic stop. All occupants were ordered out of the vehicle, including Marvin Miller, Jr.

Police searched the vehicle and almost immediately located a loaded Glock Model 30, .45 caliber pistol beneath the rear seat in the vicinity of where Mr. Miller had been seated. The gun was equipped with a laser sight and extended magazine as well as an auto sear, or "switch," capable of rendering the firearm a fully automatic weapon.



*Figure 1 – Glock with auto-sear attachment*




*Figure 2. Extended magazine, bullets, and laser sight attachment*

Subsequent DNA testing revealed Mr. Miller's DNA was predominantly present on the Glock pistol and the attached magazine.

On September 6, 2023, a two-count Indictment was filed against Marvin Miller, Jr. charging him with the following crimes:  Count 1 - Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1) and Count 2 – Possession of a Machinegun in violation of 18 U.S.C. § 922(o)(1).  On February

7, 2024, Mr. Miller pleaded guilty to Count 2 of the Indictment pursuant to a plea agreement (ECF Doc. 39).

## The Presentence Report

The United States has reviewed the PSR. The advisory sentencing guidelines range in the PSR is higher than what was contemplated by the parties in the plea agreement based on a different conclusion regarding the applicable base offense level and the PSR writer's treatment of Mr. Miller's conduct occurring on September 11, 2021, and resulting in his subsequent conviction for Felon in Possession in Hennepin County District Court file 27-CR-21-17151 as relevant conduct.

As a result of the relevant conduct arising out of Mr. Miller's gun possession on September 11, 2021, the PSR applied a two-level enhancement for possession of two firearms that were discovered during that arrest which, along with the Glock possessed in the instant case, added up to 3 total firearms triggering the enhancement under USSG § 2K2.1(b)(1)(A). (PSR ¶ 19; *see also id.* at Addendum, A.1.) The Government objects to the additional firearms enhancement consistent with its obligations under the plea agreement and will not present evidence or argument at sentencing which could support its application. Beyond this, the Government does not object to any other calculations and conclusions detailed in the Presentence Report. The PSR finds a total adjusted offense level of 19, a criminal history category of V, and a

Guidelines imprisonment range of 57-71 months. (*Id.* at ¶ 86.) The Government will request a sentence of 41 months consistent with the plea agreement of the parties.

## The Appropriate Sentence

### I.     The Nature and Circumstances of the Offense

Mr. Miller's conduct is serious in that it reflects his consistent disregard for the law and his insistence upon arming himself with weapons; in this case, a machinegun capable of emptying a high-capacity magazine in mere seconds. What makes the possession of this weapon even more dangerous to the community is the area in which Mr. Miller possessed it – near the Children's Hospital of Minnesota. While this area has long been impacted by gun violence, a spate of robberies and shootings in the latter half of 2022 in the immediate vicinity of the hospital raised the specter of danger not only for the residents in the area but also the children and families seeking critical medical treatment and the health care professionals providing that treatment.[1]

The fact that Mr. Miller may not have discharged his weapon on this particular occasion provides little solace to a community that knows all too well that gunfire can strike at any time. Indeed, "[o]nce the gun is in the defendant's hands he need only pull the trigger, an act which can be completed in a split

---

[1] *See* "No Longer That Safe Haven": Two More Security Scares Outside Minneapolis Hospitals, WCCO News (August 29, 2022), https://www.cbsnews.com/minnesota/news/childrens-minnesota-on-lockdown-following-another-armed-robbery/.

5

second and which is controlled and influenced by nothing more than the defendant's whim." *United States v. Matthews*, 520 F.3d 806, 809 (7th Cir. 2008) (quotation omitted). And when that whim controls a firearm that has been modified with a "switch," the danger exponentially increases at the same blistering rate as the bullets that spray from the barrel of a home-made machinegun.

## II.   Miller's Individual History and Characteristics

Mr. Miller's history and characteristics, as detailed in the PSR, reflect a man who endured a difficult childhood and who has been substantially harmed by gun violence in his own adult life. (*See* PSR Part B.) While the Government is certainly sympathetic to the personal hardships Mr. Miller has faced throughout his life, it cannot be overlooked that at each interface with the criminal justice system, Mr. Miller has opted to continue engaging in criminal activity rather than avail himself of the resources provided by probation and parole to set himself upon a law-abiding path.  Mr. Miller was on conditional release for a pending state charge of being a felon in possession of a firearm when he committed this offense. Mr. Miller submitted a written statement in which he stated he possessed the machinegun in this case as "protection." (PSR ¶ 16). He went on to state: "Even though I'd never use a gun to hurt someone, mentally, having it made me feel safer to have one." (*Id*.).  Mr. Miller's statement, however, does not appear supported by the evidence in this

case. The high-capacity magazine, auto sear, and laser sight affixed to Mr. Miller's weapon are hallmarks of a gun equipped not just for show but for *use*. This denial of the purpose of the possession of this weapon is cause for concern and suggests that even upon this fourth conviction, Mr. Miller may consider illegally possessing firearms a justifiable decision in the future. His explanation also shows little insight into how his own conduct in repeatedly carrying weapons designed to kill may directly contribute to others' perceived need to be armed, and the perpetuating nature of the crime.

That said, while the Government does believe Mr. Miller minimizes his conduct, he should receive credit for quickly accepting responsibility here, particularly where accepting responsibility in the instant federal case represents continuity of his acceptance of responsibility in separate state actions. On balance, the Government believes a sentence of 41 months reflects this consideration while also accounting for the seriousness of Mr. Miller's conduct.

### III.   Need for Deterrence

A separate felony conviction and sentence of 41 months is sufficient but not greater than necessary to achieve the goals of specific and general deterrence. At 36 years old, Mr. Miller is no longer a youth. He expressed regret for his conduct in this case. (PSR ¶ 16). His current motivation to plead guilty and serve his sentences for his two most recent violations of the law

7

suggest the shift in mindset that maturity can bring and provide hope that upon his release, Mr. Miller will channel that mindset toward law-abiding behavior. Such a sentence is equally important to achieve the tenets of general deterrence. Felons who possess weapons unlawfully in the District of Minnesota and those who possess machineguns must hear the message that such conduct will result in appropriate consequences. A separate and distinct sentence of 41 months will show this defendant—and others who emulate his conduct —that they cannot continue to disobey gun laws without significant consequences.

## Conclusion

For these reasons, the government respectfully submits that a sentence of 41 months' imprisonment followed by a 3-year term of supervised is an appropriate sentence that is not greater than necessary based on the facts and circumstances of this case and the applicable law.

Dated: May 28, 2024                     Respectfully Submitted,

ANDREW M. LUGER
United States Attorney

*/s/ Rachel L. Kraker*

Rachel L. Kraker (#0389380)
Assistant United States Attorney